MEMORANDUM

DALZELL, District Judge.
This Memorandum shall constitute our findings of fact and conclusions of law regarding the amount of “loss” defendant Zdzislaw Rusznica, convicted of bank fraud in violation of 18 U.S.C. § 1344, caused pursuant to U.S.S.G. § 2Fl.l(b)(l) and applicable case law. We will assume the reader is familiar with our Memorandum detailing our legal analysis and findings with respect to Rusznica’s co-defendant, Jan Kaczmarski, United States v. Kaczmarski, 939 F.Supp. 1176 (E.D.Pa.1996).
As will be seen below, Rusznica’s story is different in kind from Kaczmarski’s. Given his modest involvement in the scheme, Rusznica contends that the loss attributable to him must be limited to $9,800, the amount of the check drawn on the CoreStates account that Rusznica presented for payment on September 15, 1996. The Government argues that Rusznica intended to cause “at least a loss in excess of $70,000”, claiming that Rusznica believed that he could make two withdrawals of just under $10,000 from each account each day, for a total of just under $40,000 per day, and that he could withdraw money for a total of three days. Government Memorandum Regarding Calculation of Amount of Loss at 7. We disagree with both parties.
Putting aside the Government’s problematic arithmetic ($40,000 per day times three days equals $120,000, not $70,000), the Government has failed on its burden of proof as to Rusznica’s intended loss. First, we do not believe, as the Government suggests, that Rusznica’s knowledge of the federal structuring laws inevitably means that he intended to cause over $70,000 in loss, since on its face the colloquy in question with the Government’s cooperating witness, Sroka, was nothing more than an amateur course on “smurf-ing”.[1] Second, the Government presented no evidence that Rusznica knew of the total amount of money supposedly on deposit in the accounts. All the Government showed is that Rusznica knew that the plan was to withdraw something from both banks that day. Finally, and most importantly, there is evidence that if Rusznica knew the actual scope of the bank fraud, he would not have agreed to participate:
SliwowsM: You know him, John, why is he so nervous ... (unintelligible). [Referring to Rusznica as he was in the bank.]
Kaczmarski: No, he is calm. But you know, it is upsetting, because, you know....
Sroka: ... (unintelligible) ... calm.
Kaczmarski: Hey, (obscenity) that’s why I say, to not reveal to him, to not, to not talk in his presence about some stupid
things, because-
Sliwowski: (unintelligible) ... relaxed.
Kaczmarski: Listen, if he figures out what is the deal (obscenity), he won’t enter the bank. Nobody will. Would you go to the bank, if you knew what’s going on?
Exh. 20 at 14.
Even the Government’s own cooperating witness understood that Rusznica was not a partner in the bank fraud, and was merely an “employee” of Kaczmarski:
Sroka: ... So you don’t have to count him [Bradley] as, you know, like the fourth person in this game. There is three and there will be three. And there *1185 isn’t any fourth. Not your Ziggy, not, not nobody. You understand? Three of us. The others work for us in this
or other scope. That’s it-
Exh. 8 at 4. Based on this evidence, we find that Rusznica was not aware of the amount on deposit at the two banks. He thus did not intend to cause the entire $104,520 loss, or even the approximately $70,000 that the Government suggests.
On the other hand, we do find that the Government sustained its burden of demonstrating that Rusznica intended to cause $18,400 in loss to the two banks that day. Rusznica was aware that the gang was planning on withdrawing from two banks. See Exh. 20 at 3 (Rusznica: ‘Which one [bank] is first?”); id. at 4 (Rusznica: “Core State [sic ] is the first, right?”). Rusznica was also aware that the planned take that day was $18,400 because Sroka stated this intention in his presence: “Yeah. $18,400 is to be taken. So, we take today_” Id. at 1. Moreover, Rusznica opened accounts at both banks and it is reasonable to infer that he knew, and intended, that they would not have stopped with the $9,800 cheek at the first bank, CoreStates.
We hold that Rusznica intended to cause $18,400 in loss on September 15, 1996. Absent more, this holding would require that we add three levels to Rusznica’s base offense level pursuant to § 2Fl.l(b)(l)(D).
In our August 15, 1996 Memorandum in Kaczmarski, we set out at some length our views on the merits of adopting Judge Boudin’s approach to the dilemma of sentencing factor manipulation. See id. at 1179 to 1182. We believe that the concerns we identified in Kaczmarski apply to Rusznica. Although we have held that Rusznica intended a loss of only $18,400, that amount came into his consciousness only from Sroka. Sroka, acting on behalf of the Government, could just as easily have planned for Rusznica to withdraw less, or more, that day.
While we hesitate to say that the Government engaged in “extraordinary misconduct”, United States v. Egemonye, 62 F.3d 425, 427 (1st Cir.1995), a reduction is nevertheless appropriate for Rusznica’s special case. The Commentary to § 2F1.1 provides that a downward departure may be warranted when “[i]n a few instances, the loss determined under subsection (b)(1) ... overstate[s] the seriousness of the offense.” U.S.S.G. § 2F1.1, Application Note 10.
We believe that Rusznica presents one of the “few instances” in which the loss determination palpably overstates the seriousness of his crime. Unlike his co-defendants, Rusznica was an empty vessel. He did not even know how to write a check until Kacz-marski and Sroka gave him point-by-point instructions. Exh. 20 at 1-4. Rusznica would have been just as ignorant about what he was doing had Sroka arranged for him to withdraw five hundred or fifty thousand dollars that day. This is not to say that Sroka entrapped Rusznica,[2] but that, by virtue of the complete control the Government exercised over the bank fraud in this sting operation, the calculation of the “loss” overstates the seriousness of Rusznica’s crime. Although it is true that Rusznica may have been an enthusiastic participant in the fraud, there is no evidence in the record that Rusz-niea, unlike his co-defendants, in any way approved of the amounts Sroka, Kaczmarski and Sliwowski intended to withdraw. There is one reference in the tapes in which Ruszni-ca states his general need for money, Exh. 11 at 4, but this unspecific reference, without more, cannot serve as the basis for a finding regarding any particular amount of loss that Rusznica on his own intended.
We hold, therefore, that the sum that best measures the seriousness of Ruszniea’s offense is the amount of the check that he actually attempted to negotiate at CoreStates that day, i.e., $9,800. We shall, accordingly, sustain Rusznica’s objection to the calculation of the amount of loss in the Presentence Investigation Report, and calculate his sentence on the premise of a loss in the amount of $9,800. An appropriate Order follows.

*1186
ORDER

AND NOW, this 6th day of September, 1996, upon consideration of the parties’ mem-oranda and after a hearing this day, and in accordance with the accompanying Memorandum, it is hereby ORDERED that defendant’s objection to ¶49 of the Presentence Investigation Report (August 30,1996 rev.) is SUSTAINED.

. In its recent Sentencing Memorandum, at 5-6, the Government cites an August 18, 1995 conversation, Ex. 11 at 4-6, where Sroka manifestly was speaking in academic generalities about structuring, e.g.,: "You can go [to a bank to withdraw just under $10,000] twice a day, for instance." Id. at 5 (emphasis added). By contrast, the evidence showed that the reality of actual conduct four weeks later involved no "morning and before closing” visits to CoreS-tates and Mellon. Id. Parenthetically, Sroka's lecture on the federal "anti-smurfing” laws was incorrect. 31 U.S.C. § 5324; 31 C.F.R. § 103.11 (p) (making it a crime to structure in order to hide transactions of $10,000, not $20,-000, per day per institution). See Norman Abrams & Sara Sun Beale, Federal Criminal Law and its Enforcement (2d ed. 1993), at 366-67.

. To the contrary, we held yesterday, in a separate Order, that Rusznica was not entrapped because the Government proved beyond a reasonable doubt both that (1) Kaczmarski, and not Sroka, induced Rusznica and (2) Rusznica was predisposed to commit these crimes.